UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARRY KREISLER, )<br>on behalf of himself and a class, )<br>　　　　　　　　　　　　　　　　　　　)<br>　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　　　) 06 cv 3968<br>　　　v. ) Judge Joan H. Lefkow<br>　　　　　　　　　　　　　　　　　　　)<br>LATINO UNION, INC., )<br>and ANTONIA DEMPSEY, )<br>　　　　　　　　　　　　　　　　　　　)<br>　　　　　Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Barry Kreisler ("Kreisler"), brings this putative class action against defendants, the Latino Union, Inc. ("Latino Union") and Antonia Dempsey ("Dempsey") (collectively, "defendants"), alleging violations of the Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Latino Union and Dempsey have each moved to dismiss Kreisler's complaint for failure to state a claim upon which relief may be granted. The court has jurisdiction to consider this case under 15 U.S.C. § 1692k and 28 U.S.C. § 1331. For the reasons set forth below, Latino Union's motion is denied, but Dempsey's motion is granted.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint and

draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999).

## ALLEGATIONS OF THE COMPLAINT

Latino Union is a nonprofit community organization that works to combat the labor abuses faced by day laborers working in the construction industry. Compl., at ¶ 5, Ex. A.[1] It does this, in part, by collecting debts owed to day laborers for wages and/or for materials supplied by the laborers. *Id.* at ¶ 7. Latino Union publishes the following on its website:

**Advocacy and Wage Theft Recovery**

The Latino Union maintains a network of supportive attorneys and trained volunteers as part of the Legal Clinic. The clinic provides rights related trainings as well as information and referral services for immigration, wage claim, criminal, and worker's compensation cases. Within the clinic, the Wage Theft Task Force (WTTF) is a collaboration aimed at creating a winning strategy of direct action casework that does not rely solely on legal or government agency support for cases in which day laborers have been denied pay for their work. Workers and volunteers strategize collectively how to recoup stolen wages from unscrupulous employers. Since its founding, the LU has supported workers in collecting over $100,000.

*Id.* at ¶ 8. Dempsey works for Latino Union as a wage theft advocate. *Id.* at ¶ 6.

---

[1] Because this exhibit was attached to Kreisler's complaint, the court can consider it in analyzing Kreisler's motion to dismiss. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

2

On May 12, 2006, Kreisler entered into a written contract with Ivica Grgic ("Grgic") for Grgic to perform drywall work in Kreisler's basement. *Id.* at ¶ 11. Grgic in turn hired Alfonso Sandoval ("Sandoval") through Latino Union's office to perform drywall, taping and plaster work as a day laborer beginning on May 13, 2006. *Id.* at ¶ 12, Ex. A. Sandoval worked on the project for less than ten days. *Id.* at ¶ 13.

In June of 2006, Dempsey and Sandoval went to Kreisler's home and spoke with Kreisler's girlfriend.[2] *Id.* at ¶ 14. Dempsey and Sandoval stated that Sandoval had not been paid by Grgic, and that Kreisler would have to pay Sandoval for his work unless they could collect from Grgic. *Id.* Kreisler's girfried told Dempsey and Sandoval that Kreisler had paid Grgic in full in the last week of May, 2006. Compl., at ¶ 14. Dempsey said that if they could not get the money from Grgic that they would file a mechanic's lien against Kreisler's property. *Id.*

On July 14, 2006, Dempsey called Kreisler's home and again spoke with his girlfriend. *Id.* at ¶ 16. During this conversation Dempsey stated that unless Kreisler cooperated, they would "come after him" for the debt owed to Sandoval. *Id.* She demanded that Kreisler allow her and Sandoval to come to Kreisler's house in order to "come to some sort of agreement." *Id.* Dempsey called again on July 17, 2006 and had another conversation with Kreisler's girlfriend. *Id.* at ¶ 17. She called again on July 20, 2006, again spoke to Kreisler's girlfriend, and said, among other things, that if Kreisler refused to cooperate, to have a "sit down meeting," or to help her locate Grgic, she would be forced to file a mechanic's lien against his property. *Id.* at ¶ 19.

---

[2] Kreisler's girlfriend, Melanie Pennycuff, is acting as his attorney for purposes of this lawsuit, but there is no indication that she was acting in that capacity at the time that the relevant events occurred. Compl., at ¶ 27.

3

On July 20, 2006, Dempsey mailed a letter to Kreisler stating the amount owed to Sandoval ($1,500) and requesting a meeting to negotiate an agreement between the two parties. Compl., at ¶ 20, Ex. A. The letter was written on Latino Union letterhead and signed by Dempsey as a Wage Theft Advocate. *Id.* The letter said that if an agreement was not reached that Dempsey would continue the legal process towards filing a lien. *Id.* It attached a document referred to as a "notice of services," which stated that Sandoval started work on May 22, 2006. *Id.* at ¶¶ 20-21, Ex. B. Kreisler filed his complaint on July 24, 2006.

## DISCUSSION

Kreisler alleges that the communication by Latino Union and Dempsey to Kreisler's girlfriend about Kreisler's debt violates Section 1692c(b) of the FDCPA (Count I). He also asserts that defendants failed to send a written notice to him as required by Section 1692g(a)[3] (Count II). Finally, Kreisler alleges that defendants made false or misleading representations violating Section 1692e by threatening to pursue a lien that cannot legally be taken and by fraudulently claiming Sandoval's start date (Count III). In their motion to dismiss, defendants argue that they are not "debt collectors" as defined by Section 1692a(6), that they never attempted to collect a "debt" as defined by Section 1692a(5), and that they did not make any false or misleading statements regarding a third party's lien rights in violation of Section 1692e.

### I. Debt collectors

The FDCPA defines "debt collector" as follows:

---

[3] Plaintiff cites to 15 U.S.C. § 1692e in error; the court will interpret his claim as one under 15 U.S.C. § 1692g(a).

4

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another*....

15 U.S.C. § 1692a(6) (emphasis added).

Latino Union first argues that Kreisler failed to plead any facts supporting the allegation that defendants are "debt collectors" and therefore the FDCPA does not apply to them. This is incorrect, because Kreisler alleged that (1) Latino Union and Dempsey are in the business of collecting debts owed to day laborers, Compl., at ¶ 7; (2) Latino Union advertises this function on its website, where it touts its success in having helped workers collect over $100,000, *id.* at ¶ 8; and (3) in "many instances where the employer/contractor cannot be located or refuses or is unable to pay the day laborer, the Defendants seek to collect the amounts allegedly owed to the laborer from the homeowner who contracted with the employer/contractor to perform the services and to provide the materials." *Id.* at ¶ 9. Drawing all reasonable inferences in Kreisler's favor, the court concludes that Kreisler may be able to prove that defendants are debt collectors. Unless any exceptions to the definition apply, his complaint cannot be dismissed on this ground.

Latino Union next argues that if it is a debt collector under Section 1692a(6)'s definition, it qualifies for the Section 1692a(6)(B) "affiliate exception":

> The term [debt collector] does not include ... any person while acting as a debt collector for another person, both of whom are *related by common ownership or affiliated by corporate control*, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts ....

(Emphasis added.) Latino Union argues that it is affiliated with Sandoval under this exception and therefore is not a debt collector. The Seventh Circuit has set out a two prong test to

determine whether this exception applies.[4] Before applying this test, however, the court must determine whether Latino Union and Sandoval can be "related by common ownership or affiliated by corporate control."

Courts have interpreted the phrase "related by common ownership or affiliated by corporate control" broadly in the sense that they have not required *complete identity of ownership* among entities that they find to be related. *Walcker* v. *SN Commercial, LLC*, 2006 WL 3192503, at *5-*6 (E.D. Wash. Nov. 2, 2006) (two companies were "related by common ownership" where some of each of their stock was held by the same family). Beyond that, however, the parties have not cited any case (and the court has found none) where the corporate affiliate exception is applied to any entities other than related *companies* or partners.[5] *See, e.g., Aubert* v. *Am. Gen. Fin., Inc.*, 137 F.3d 976, 978-79 (7th Cir. 1998); *Singleton* v. *Montgomery Ward Credit Corp.*, 2000 WL 1810012, at *2 (N.D. Ill. Dec. 11, 2000); *Friedman* v. *May Dept. Stores Co.*, 990 F. Supp. 571, 574-75 (N.D. Ill. 1998); *Taylor* v. *Rollins, Inc.*, 1998 WL 164890, at *4-*5 (N.D. Ill. March 30, 1998); *Young* v. *Lehigh Corp.*, 1989 WL 117960 at *22 (N.D. Ill. Sept. 28, 1989); *Hutt* v. *Albert Einstein Med. Ctr.*, 2005 WL 2396313, *7 (E.D. Pa. Sept. 28, 2005);

---

[4] "[A] corporate affiliate is excluded from the Act's coverage so long as it satisfies two conditions: (1) the affiliate collects debts only for entities with which it is affiliated or related; and (2) the principal business of the affiliate is not debt collection." *Aubert* v. *American Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) (citations omitted).

[5] In *Kang* v. *Eisenstein*, 962 F. Supp. 112, 114-115 (N.D. Ill. 1997), the court considered whether an individual who was a partner in a partnership could be a "debt collector" under the FDCPA. Defendants invoked two exceptions to the definition: Section 1692a(6)(B) and also Section 1692a(6)(A), which excepts "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." Without saying which exception it was applying, the court found that the individual was "not a 'debt collector.' [He was] a limited partner of the [Creditor], a limited partnership, and [he] acted on the [creditor's] behalf ...." 962 F. Supp. at 115 (citing *Dolente* v. *McKenna*, 1996 WL 304850, at *3 (E.D. Pa. June 6, 1996) (applying the Section 1692a(6)(A) exception to partners in a limited partnership)). Although this case could support an argument that an individual can be related or affiliated to a company under Section 1692a(6)(B), it is distinguishable from this case because there is no allegation here that Sandoval was a partner or had any ownership interest in Latino Union. The court also finds it likely that the *Kang* court had the Section 1692a(6)(A) exception in mind instead of the Section 1692a(6)(B) affiliate exception.

6

*Backuswalcott v. Common Ground Cmty. HDFC, Inc.*, 104 F. Supp. 2d 363, 366-67 (S.D.N.Y. 2000); *Pavone v. Citicorp Credit Services, Inc.*, 60 F. Supp. 2d 1040, 1047-48 (S.D. Cal. 1997); *Meads v. Citicorp Credit Servs., Inc.*, 686 F.Supp. 330, 333-34 (S.D. Ga. 1988).

According to its legislative history, the FDCPA was intended to apply to independent (third party) debt collectors, instead of creditors themselves, because "independent debt collectors are the prime source of egregious collection practices.... Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rep. No. 95-382, at 1-2 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696-97; *see also Meads v. Citicorp Credit Servs., Inc.*, 686 F. Supp. 330, 334 (S.D. Ga. 1988). The Senate Report said that "the term 'debt collector'" was intended "to cover all third persons who regularly collect debts for others." *Id.* Given this background, the exception for corporate affiliates was likely based on Congress's belief that they would identify with the creditor and be motivated to maintain the creditor's good will.

This judicial and legislative history, along with the plain language of the statute, confirms that the corporate affiliate exception should not apply to Latino Union's relationship with Sandoval. It is not clear how an individual could be related to a company by common "ownership" or affiliated by corporate "control," since individuals are not owned or controlled in the sense that companies are. And although Sandoval may very well have a close relationship with Latino Union, he does not have the kind of relationship intended to be covered by the statutory exception. Sandoval and Latino Union do not have an identity of interests that would motivate them to protect each other's good will. For these reasons, the court finds that Kreisler

7

has adequately pled that Latino Union fits the definition of debt collector and that Latino Union has failed to show that it fits into any exceptions for purposes of this motion to dismiss.

**II.     Debt**

"Because not all obligations to pay are considered 'debts' under the [FDCPA], the definition of 'debt' thus serves to limit the [statute's] scope." *Berman v. GC Servs. Lim. P'Ship*, 146 F. 3d 482, 484 (7th Cir. 1998). The FDCPA defines "debt" as follows:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). To determine whether an obligation to pay money is a debt under the FDCPA, the Seventh Circuit has set out another two-part test. *Berman*, 146 F.3d at 484 (citing *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481-82 (7th Cir. 1997)). First, the court must ask whether there is an obligation to pay money arising out of a consensual transaction. *Id.*; *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997). If so, the court must determine whether "money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* If the answer to both parts is yes, the obligation to pay is a "debt." In summary, "all that is required is an obligation to pay arising from a consensual transaction, where parties negotiate or contract for consumer-related goods or services." *Berman*, 146 F.3d at 484.

Latino Union contends that Kreisler's obligation to pay money to Sandoval fails both parts of the test and therefore no FDCPA debt could have arisen between Kreisler and Sandoval. First, it argues that there was no consensual transaction between Kreisler and Sandoval; instead,

8

the only transaction that occurred was the written contract between Kreisler and Grgic. It implies that the "parties" referenced in the *Berman* test must be the same as the parties to the FDCPA lawsuit. Latino Union does not cite any authority for reading this additional requirement into the definition of "debt," however, and its argument is belied by cases such as *Berman* itself. There, the Court considered whether an obligation to pay unemployment insurance contributions to the State of Illinois arising out of the plaintiff's hiring of a nanny was a debt under the FDCPA. 146 F.3d at 483. In applying the first part of the *Berman/Newman* test, the Court held that the obligation to pay money to the State that arose out of the plaintiff's contract with the nanny *did* "arise out of a consensual transaction, where parties negotiate or contract for consumer-related goods or services.... [T]he obligation to make unemployment insurance contributions derived from the hiring of an employee - in this case a nanny." *Id.* at 486 (quoting *Bass*, 111 F.3d at 1326). Although it did not address the fact that the transaction was between the plaintiff and the nanny instead of the plaintiff and the State, the Seventh Circuit assumed that the requisite transaction need not be between the same parties as later become plaintiff and defendant in a FDCPA lawsuit.[6] In this case, the obligation to pay Sandoval arose out of the contract for services with Grgic, which satisfies the requirement for a consensual transaction.

Latino Union next posits that the money, property, insurance, or services which are the subject of the transaction were not primarily for personal, family, or household purposes. In this argument, however, Latino Union characterizes the transaction in question not as the contract for

---

[6] In *Shorts v. Palmer*, a case not cited by Latino Union but found by the court, the alleged "debt" was the plaintiff's obligation to pay a drug store for cigars that he had attempted to shoplift. 155 F.R.D. 172, 173 (S.D. Ohio 1994). The court said that "Plaintiff never had a contractual arrangement of any kind with any of the *defendants*." *Id.* at 176 (emphasis added). Because there was no consensual transaction between the plaintiff and anyone at all in that case, however, it is unlikely that that court considered the question raised here. *Shorts* therefore provides scant support for Latino Union's position.

9

drywall services, but as Sandoval's failure to obtain a subcontractor's lien waiver from Grgic, which ultimately led to Sandoval's need to file this lawsuit as a last resort to collect his money. This faulty premise confuses Latino Union's argument and leads it away from the appropriate analysis of whether the drywall services that were the subject of the relevant transaction between Kreisler and Grgic were for Kreisler's personal, family, or household purposes. Latino Union has not effectively argued that they were not, and the court finds that Kreisler has adequately alleged that the drywall services were for Kreisler's household purposes. Therefore, the obligation to pay Sandoval money is a debt for purposes of the FDCPA, and Latino Union's argument to the contrary fails to provide a basis to dismiss the complaint.

### III.   False or Misleading Statements

Count III of Kreisler's complaint alleges that the defendants violated 15 U.S.C. § 1692e, which provides, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."[7]

Necessary background knowledge to evaluate these claims is the Illinois Mechanics Lien Statute, 770 Ill. Comp. Stat. 60/5(b)(ii), which provides that a subcontractor must, in order to preserve his right to file a lien against property for nonpayment, send a statement to the owner of the property within 60 days of beginning work on a project:

---

[7] Section 1692e continues, "Without limiting the general application of the foregoing, the following conduct is a violation of this section:
...
(2) The false representation of (A) the character, amount, or legal status of any debt ...
(4) The false representation or implication that nonpayment of any debt will result in ... the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector intends to take such action....
(5) The threat to take action that cannot legally be taken or that is not intended to be taken....

10

> (b) The following shall apply to an owner-occupied single-family residence:
>
> ...
>
> (ii) Each subcontractor who has furnished, or is furnishing, labor, services, material, fixtures, apparatus or machinery, forms or form work *in order to preserve his lien*, shall notify the occupant either personally or by certified mail, return receipt requested, addressed to the occupant or his agent at the residence *within 60 days* from his first furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work, of his agreement to do so.
>
> The notice shall contain ... the date he started to work or to deliver materials....
> The notice shall also contain the following warning:
>
> "NOTICE TO OWNER
> The subcontractor providing this notice has performed work for or delivered material to your home improvement contractor. These services or materials are being used in the improvements to your residence and entitle the subcontractor to file a lien against your residence if the labor, services, material, fixtures, apparatus or machinery, forms or form work are not paid for by your home improvement contractor."

Failure to send this notice within 60 days is not fatal to the right to file a lien, but "[a]ny notice given ... after 60 days by the subcontractor ... shall preserve [a subcontractor's] lien ... only to the extent that the owner has not been prejudiced by payments made before receipt of the notice." 770 Ill. Comp. Stat. 60/5(b)(iii).

Kreisler alleges that Sandoval began work on May 13, 2006. Compl., at ¶ 12. Kreisler paid Grgic the balance on the contract during the last week of May, 2006. Compl., at ¶ 14. Sandoval did not send his notice of services to Kreisler until July 18, 2006 (66 days after he allegedly began work on July 13, 2006). Compl., Ex. B. On that notice, Sandoval listed his start date as May 22, 2006 (only 57 days before he sent the notice on July 18, 2006). *Id.*

Kreisler cites the following alleged misconduct as examples in support of his Count III: (1) Dempsey made a statement in her letter of July 17, 2006 that "[i]f we are not able to come to an agreement, we will be obliged to continue the legal process toward filing a lien," when

11

Sandoval had no preserved right to file a lien; (2) for the purposes of Sandoval's July 18 notice to Kreisler, Dempsey and Sandoval conspired to fraudulently claim his start date as May 22, 2006 instead of May 13, 2006, affecting his rights to pursue a lien; and (3) Dempsey represented that Sandoval is a subcontractor who is entitled to file a lien, instead of an employee who would not be. In his response to Latino Union's motion, Kreisler also argues that defendants misrepresented the amount due to Sandoval as $1,500, which Kreisler believes is unfounded based on the small amount of work Sandoval did.

Latino Union disputes that any of these statements was fraudulent. While the court acknowledges that Latino Union's arguments regarding (1) and (3) are at least colorable, because statement (2) has been sufficiently pled, Count III survives the motion to dismiss. Latino Union's only response to statement (2) is the fact that the Mechanics Lien Act permits subcontractors to serve notice either before or after 60 days from the date that they began work. From that premise, it argues that a false statement regarding when work began would not be false or misleading under 15 U.S.C. § 1692e. The court disagrees because the difference between a start date of May 13 and May 22, 2006 significantly affected Sandoval's right to pursue a lien where Sandoval is alleged to have had knowledge that Kreisler had paid Grgic in full, and this alleged misrepresentation was made in connection with the collection of a debt. Therefore, the court finds that Kreisler has adequately alleged a violation of 15 U.S.C. § 1692e regarding statement (2). Count III will not be dismissed. The court declines to evaluate the other allegations cited in support of Count III at this time.

## IV. Defendant Antonia Dempsey

Defendant Dempsey has moved to dismiss the complaint against her on the ground that she is alleged to be an employee or volunteer of Latino Union. The Seventh Circuit said in *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000), that under the FDCPA "individuals do not become 'debt collectors' simply by working for or owning stock in debt collection companies ... we [have] held that the Act does not contemplate personal liability for share holders or employees who act in behalf of those companies, except perhaps in limited instances where the corporate veil is pierced.... Rather, the FDCPA has utilized the principle of vicarious liability.... Just as in the Title VII context, the debt collection company answers for its employees' violations of the statute." (Internal citations omitted.) While Kreisler argues that the Seventh Circuit wrongly interpreted its own precedent, that is not a judgment that this court is free to make. *Pettit* was applied recently in *Cole v. Lieberman, Ltd.*, 2005 WL 2848446, at *4 (N.D. Ill. Oct. 26, 2005) (Darrah, J.). Because Kreisler alleges in his own complaint that Dempsey is an employee or volunteer of Latino Union, he has pled himself out of court, and his claims against Dempsey must be dismissed.

## ORDER

For the reasons stated above, Latino Union's motion to dismiss [#8] is denied. Defendant Antonia Dempsey's motion to dismiss [#11] is granted.

Dated: April 12, 2007    ENTER: *Joan N. Lefkow*

JOAN HUMPHREY LEFKOW
United States District Judge